**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-0219-WJM

MADELINE RENDON-GARCIA,

     Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,[1]

     Defendant.

---

## ORDER VACATING DECISION OF ADMINISTRATIVE LAW JUDGE

---

This is a Social Security benefits appeal brought under 42 U.S.C. § 405(g).

Plaintiff Madeline Rendon-Garcia ("Rendon"), proceeding *pro se*, challenges the final

decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying

her application for disability insurance benefits. The denial was affirmed by an

administrative law judge ("ALJ"), who ruled that Rendon was not disabled within the

meaning of the Social Security Act.  This appeal followed.

For the reasons set forth below, the ALJ's decision is vacated and this case is

remanded to the Commissioner for further proceedings consistent with this order.

### I. BACKGROUND

Rendon was born in 1968 and was 47 years old on the alleged onset date of July

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, and is automatically substituted as the proper defendant under Federal Rule of Civil Procedure 25(d) and the last sentence of 42 U.S.C. § 405(g).

27, 2016.  (Administrative Record ("R.") [ECF No. 18] at 54, 185.)[2]  Her highest level of educational achievement was eighth grade.  (R. at 94.)  In the fifteen years preceding the alleged onset date, she worked in the receiving and stocking department for an auto parts company.  (R. at 73–74, 94.)  That job required "constant lifting and constant moving and constant standing."  (R. at 74.)

Rendon applied for disability insurance benefits on December 29, 2015.  (R. at 185.)  She claimed disability due to degenerative disc disease, fibromyalgia, and depression.  (R. at 90–91.)  Her application was denied on May 24, 2016.  (R. at 102.)  She requested and received two hearings (the first without counsel, the second with counsel) in front of an ALJ, Jamie Mendelson.  (R. at 53, 67.)  Those hearings took place on November 9, 2017, and March 7, 2018.  (*Id.*)  On April 19, 2018, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[3]

At step one, the ALJ found that Rendon had not engaged in substantial gainful activity since the alleged onset date.  (R. at 35.)

At step two, the ALJ found that Rendon "has the following severe impairments": "degenerative disc disease; degenerative joint disease of the bilateral knees; impingement syndrome and tendon tears of the right shoulder, status-post 2017

---

[2] Rendon originally alleged an onset date of June 12, 2012 (R. at 185), but later amended that to July 27, 2016 (R. at 54).

[3] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to his or her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).  The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

arthroscopic repair; fibromyalgia; obesity; and major depressive disorder." (*Id.* (citation omitted).)

At step three, the ALJ found that Rendon's impairments, while severe, did not meet or medically equal any of the "listed" impairments in the Social Security regulations. (R. at 36.)

Before proceeding to step four, the ALJ assessed Rendon's residual functional capacity ("RFC"). The ALJ concluded that Rendon has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except as follows. She can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. She can frequently reach bilaterally, but can only occasionally reach overhead with her dominant, right upper extremity. She can occasionally stoop, kneel, crouch, and crawl. She can never be exposed to unprotected heights. Mentally, she can understand, remember, and carry out tasks of limited complexity consistent with unskilled work, and she can tolerate occasional interaction with supervisors, coworkers, and member[s] of the public.

(R. at 38–39.) Then, at step four, the ALJ found that Rendon's RFC prevented her from returning to her past work. (R. at 44.)

Finally, at step five, the ALJ found that Rendon's RFC would allow her to work as a merchandise marker, housekeeping cleaner, and collator/operator, for all of which there are sufficient positions in the economy. (R. at 43–44.) Thus, the ALJ concluded that Rendon is not disabled within the meaning of the Social Security Act from July 27, 2016, through the date of decision, April 19, 2018. (R. at 44.)

Rendon appealed to the Social Security Appeals Council, submitting recently generated medical records in the process. (R. at 7–17, 21–29.) Rendon's attorney also withdrew during the Appeals Council process. (R. at 20.)

The Appeals Council denied review. (R. at 1.) Concerning the newly submitted

evidence, the Appeals Council stated,

> This additional evidence does not relate to the period at issue [*i.e.*, July 27, 2016 through April 19, 2018]. Therefore, it does not affect the decision about whether you were disabled beginning on or before April 19, 2018. [¶] If you want us to consider whether you were disabled after April 19, 2018, you need to apply again.

(R. at 2.) Rendon then filed this action seeking review of the ALJ's April 19, 2018 decision. (ECF No. 1.)

## II. STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is the amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III. ANALYSIS

Rendon offers six arguments against the ALJ's decision, labeled "Reason 1" through "Reason 6." Reasons 1–5 all challenge some aspect of the ALJ's RFC. Reason 6 argues that the evidence submitted to the Appeals Council should have

mattered.  The Court will first address the RFC challenges, and then turn to the Appeals Council's disposition.

**A.    RFC Challenges**

Reasons 1–5 take the form of statements by Rendon about the severe effects that her conditions have upon her.  (ECF No. 26 at 1–2.)  Given Rendon's *pro se* status, the Court will construe these statements as arguments that the ALJ's RFC analysis is not supported by substantial evidence.  The Court finds that it need only discuss Reasons 2 and 3.

1.    <u>Knee Pain</u>

Under Reason 2, Rendon says that her knee problems (caused by degenerative joint disease) cause a loss of balance.  (ECF No. 26 at 1.)  But the ALJ accommodated this assertion by finding that Rendon "can never climb ladders, ropes, or scaffolds," and "can never be exposed to unprotected heights."  (R. at 38.)  Thus, Rendon's assertions about her balance do not provide a reason to vacate the ALJ's decision.

Rendon further says that her knee pain means that she "can't bend, squ[a]t, [or] get on my hand[s] and knees" (ECF No. 26 at 1), in contrast to the RFC's assessment that "[s]he can occasionally stoop, kneel, crouch, and crawl" (R. at 38).  The ALJ supported this portion of the RFC by noting several medical records reporting "good range of motion in [Rendon's] . . . knees since July 2016."  (R. at 40.)

Although good range of motion in the knees is one aspect of the ability to stoop, kneel, etc., it is not substantial evidence, by itself, to discount Rendon's reports of the *pain* she experiences when performing these activities.  Accordingly, the ALJ did not have substantial evidence to find that Rendon could occasionally stoop, kneel, crouch,

and crawl.[4]

2.  Shoulder Pain

Under Reason 3, Rendon says that her right shoulder continues to create problems because, although she had surgery, the surgery did not return her to full functionality: "I still have [a] hard time lifting and holding, opening things with my right arm [which] is my [dominant] hand." (ECF No. 26 at 1.)

The ALJ's only shoulder-related restriction was that Rendon could "occasionally reach overhead with her dominant, right upper extremity." (R. at 38.) In the ALJ's view, this adequately accommodated Rendon's shoulder, which had "retained overall good range of motion . . . both prior to and since her October 2017 arthroscopic surgery." (R. at 41.)

Again, range of motion is only one aspect of the alleged disabling condition. Evidence about range of motion and the ability to reach overhead, although important, is not a substitute for evidence about the ability to lift, hold, and manipulate. Accordingly, the ALJ did not have substantial evidence to reject Rendon's claim to further limitations with her right arm and hand.

3.  Harmless Error

The Court is convinced that the foregoing two errors are not harmless, and so would require remand by themselves, even if the ALJ committed no other error. A harmless error finding may save an ALJ's decision only "where, based on material the ALJ did at least consider (just not properly)," the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved

---

[4] Social Security rulings define "occasionally" as "occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251; *accord* SSR 96-9p, 1996 WL 374185.

the factual matter in any other way." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733–34 (10th Cir. 2005) (internal quotation marks omitted).

The Court cannot confidently reach such a conclusion. First, the Court is aware of no material that the ALJ improperly considered that could support the ALJ's RFC with respect to Rendon's knees and shoulder. Second, Rendon's knee and shoulder limitations, if deemed credible under all the evidence, would almost certainly rule out the three jobs that Rendon's RFC supposedly allows her to perform: merchandise marker, housekeeping cleaner, and collator/operator. (R. at 43–44.)

For these reasons, the ALJ's errors as to Rendon's knees and right shoulder justify vacating the ALJ's decision for reconsideration, and the Court need not address the remaining RFC-related arguments that Rendon raises. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, court declined to address other issues raised on appeal); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."). The Court expresses no opinion as to those other arguments and neither party should take the Court's silence as tacit approval or disapproval of how the evidence was considered. The Court does not intend by this opinion to suggest the result that should be reached on remand; rather, the Court encourages the parties as well as the ALJ to consider the evidence and the issues anew. *See Kepler v. Chater*, 68 F.3d 387, 391–92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case." (internal quotation marks omitted)).

**B.      New Evidence Presented to the Appeals Council**

Although the Court will be vacating and remanding for the reasons stated above, the Court sees the potential for confusion on remand if it does not resolve Rendon's Reason 6, which relates to how the Appeals Council treated new medical records submitted to it.

Again, the ALJ's decision is dated April 19, 2018.  (R. at 44.)  During June and July 2018, Rendon was evaluated on multiple occasions for potential early-onset dementia, because she had "recently" "begun to notice" "deficits in memory functioning." (R. at 27.)  These evaluations culminated in a report by a licensed psychologist dated August 1, 2018.  (R. at 21.)  The psychologist concluded, somewhat equivocally, that "it was possible if she had declined from a previous level of functioning that it could be related to dementia."  (R. at 27.)  The psychologist further stated that Rendon "met the criteria for" a diagnosis of "Major Neurocognitive Disorder, Due to probable Alzheimer's disease."  (R. at 28.)  She recommended that Rendon consult with a neurologist for a second opinion.  (R. at 29.)  Rendon submitted this report to the Appeals Council, which deemed it not relevant because it post-dated the ALJ's opinion.  (R. at 2.)

Rendon urges this Court to consider this new diagnosis.  (ECF No. 26 at 3.)  The Court construes this argument to mean that at least the Appeals Council should have considered the new diagnosis.

The Appeals Council cannot refuse to consider every item of evidence that postdates an ALJ's opinion.  "There can be no doubt that medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that period."  *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984). However, under these specific circumstances, the Court finds the Appeals Council's

disposition to be justified.  This is not a case where Rendon was claiming disabling memory deficits in front of the ALJ and the ALJ rejected such a claim for lack of evidence.  Rather, by Rendon's own admission, she had only "recently" "begun to notice" memory problems (although she now believes she has "always been this way"). (R. at 27.)  Thus, the Appeals Council did not err in concluding that Rendon was raising a new allegedly disabling condition, for which she would need to file a new application.

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is VACATED and this case is REMANDED for rehearing.[5]  The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 14th day of February, 2020.

BY THE COURT:

_____
William J. Martinez
United States District Judge

---

[5] Because Rendon is representing herself, the Court notes the following for her benefit. "Vacated" means it is as if the April 19, 2018 decision never happened.  "Remanded for rehearing" means that the Social Security Administration must look at the evidence again and come to a new decision.  There is still no guarantee that the Social Security Administration will decide that Rendon qualifies for disability insurance benefits.  The Court encourages Rendon to again seek an attorney, both for the rehearing process and, if appropriate, to assist in submitting a new application based on the suspected early-onset dementia.